UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Marvin Lumber & Cedar Company, | Court File No. 15-cv-1869 (MJD/LIB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Len Severson, | |
| Defendant. | |

This matter is before the undersigned United States Magistrate Judge upon Plaintiff's Motion for Preliminary Injunction, [Docket No. 9]. On May 15, 2015, the Honorable Michael J. Davis, United States District Judge for the District of Minnesota, referred the present motion to the undersigned Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). (Order of Referral [Docket No. 19]). The Court held a motion hearing on June 2, 2015, and the Court took Plaintiff's motion under advisement. For reasons discussed herein, the Court recommends **GRANTING in part** and **DENYING in part** Plaintiff's Motion for Preliminary Injunction, [Docket No. 9].

I.   BACKGROUND

On or about March 27, 2015, Plaintiff Marvin Lumber & Cedar Company d/b/a Marvin Windows & Doors ("Plaintiff" or "Marvin") initiated the present case against Defendant Len Severson ("Defendant") in Minnesota state court. (Notice of Removal [Docket No. 1], ¶ 1). Defendant removed the present case from Minnesota's Ninth Judicial District to the United States District Court for the District of Minnesota on April 3, 2015, pursuant to 28 U.S.C. §§ 1332 and 1446. (Id.)

In its Complaint, Plaintiff characterizes the present case as an action to "stop, prevent and remedy breaches of a Confidentiality and Non-Compete Agreement that Mr. Severson entered into as a condition of his employment with [Plaintiff.]" (Compl. [Docket No. 1-1], ¶ 1). Plaintiff alleges that Defendant worked as a commercial sales employee for Plaintiff from February 23, 2013, to February 13, 2015, selling windows and doors for large and/or high-end residential applications and commercial projects in Wisconsin and Michigan's Upper Peninsula. (Id.) Plaintiff asserts that since resigning from Plaintiff's employ, Defendant has been working as a general manager with sales duties to commercial customers in Wisconsin for VerHalen Pella Windows ("VerHalen"). (Id.) Plaintiff alleges that VerHalen directly competes with Plaintiff and that, as a direct result, Defendant's employment with VerHalen violates his non-competition and non-solicitation obligations to Plaintiff. (Id.)

Plaintiff alleges that during his time as a Commercial Sales Representative for Plaintiff, Defendant developed and sustained relationships with commercial contractors, architects, designers, dealers, and retailers; planned and implemented activities to provide commercial firms with product and service information; assisted dealers in project management; and performed related duties. (Id. ¶ 7). On October 1, 2014, Plaintiff changed Defendant's title to Architectural Project Manager, but Defendant's duties generally remained the same. (Id. ¶ 8). Plaintiff alleges that its business relies heavily on repeat sales through customers such as architects, designers, contractors, and retailers, and that Plaintiff provides its sales personnel with resources to develop and increase goodwill with customers. (Id. ¶ 10). Plaintiff alleges that Defendant had access to confidential information, including confidential product pricing, customer information and preferences, prior sales information, and pending sales and projects. (Id. ¶ 15).

Plaintiff alleges that as a condition of Defendant's employment, Plaintiff required Defendant to sign a Confidentiality and Non-Competition Agreement. (Id. ¶ 16, Ex. D). Defendant signed the Agreement on February 11, 2013, prior to commencing his employment with Plaintiff. (Id. ¶ 17, Ex. E). Plaintiff alleges that Defendant agreed that certain information constituted "confidential and trade secret information" and that Defendant would never "divulge such information to any person other than [Plaintiff] and persons to whom [Plaintiff] has given its consent." (Id. ¶ 18).

Additionally, Defendant agreed that during his employment with Plaintiff and for a period of 18 months after termination of his employment with Plaintiff, Defendant would neither directly nor indirectly

> [W]ithin the geographic area in which [Marvin] does business . . . . accept employment or render services to . . . any person, firm, corporation, or department or division thereof, which is engaged in the . . . . marketing, sale, support or promotion of any products or services that are competitive with any products or services of [Marvin] . . . on which the Employee worked or with respect to which the Employee received confidential or proprietary information during the Employee's engagement with [Marvin]; [or]
>
> [I]n any way interfere or attempt to interfere, directly or indirectly with the [Marvin]'s relationships with any of its current or potential customers or suppliers.

(Id. ¶ 19) (edits in Complaint).

Plaintiff alleges that in late 2014, Defendant informed his supervisor that he was considering a job with VerHalen and requested that Plaintiff release him from his non-compete obligations. (Id. ¶ 23). Defendant's supervisor noted that the VerHalen job included significant sales responsibility and informed Defendant that he believed that accepting the job would violate Defendant's non-compete, but he agreed to discuss Defendant's job opportunity with "Marvin's

3

leadership team." (Id. ¶ 26). The leadership team unanimously agreed that the VerHalen position competed with Plaintiff and would constitute a direct and substantial violation of Defendant's non-competition obligations. (Id. ¶ 27). Defendant's supervisor promptly notified Defendant of the company's decision; Defendant indicated that he would not accept the job. (Id. ¶ 28). However, Plaintiff alleges that a few minutes later, Defendant offered to forego his incentive compensation in exchange for being relieved of his non-competition obligations. (Id. ¶ 29). Defendant's supervisor informed Defendant that Plaintiff was not interested in the proposal. (Id.)

Plaintiff alleges that on Friday, January 30, 2015, Defendant received his annual incentive payment, and on Monday, February 2, 2015, Defendant resigned his position with Plaintiff via email, effective Friday, February 13, 2015. (Id. ¶¶ 32-33). Plaintiff's upper management immediately reached out to Defendant, encouraged him to stay, and offered to help Defendant obtain employment with a Marvin-based dealer; Plaintiff also took several opportunities to remind Defendant of his non-competition obligations. (Id. ¶¶ 34-38).

Plaintiff alleges one count of breach of contract and one count for injunctive relief. (Id. at Counts I & II). Plaintiff alleges that paragraph 4 of the Confidentiality and Non-Competition Agreement precludes Defendant from using or disclosing to third parties confidential and/or trade secret information learned during the course of Defendant's employment with Plaintiff. (Id. ¶ 48). Plaintiff alleges that paragraph 7 of the Agreement precludes Defendant from accepting employment with a competing company during his employment and for a period of 18 months following his termination. (Id. ¶ 49). Plaintiff alleges that Defendant's employment with VerHalen directly violates these provisions of the Agreement:

> VerHalen Pella Windows distribute a competitive product, and Mr. Severson's duties includes [sic] selling competitive products and services to customers in the same territory that he served during his employment with Marvin. By competing with Marvin directly in

4

>the same geographic area, Mr. Severson is unfairly trading on the
>goodwill that Marvin employed him to assist in building.

(Id. ¶ 54). Plaintiff seeks temporary and permanent injunctive relief against Defendant, enjoining Defendant from using or disclosing any trade secret or confidential information that Defendant acquired by reason of his employment with Plaintiff and from providing services to VerHalen for a period of 18 months. (Id. ¶ 60).

The Confidentiality and Non-Compete Agreement ("the Agreement") provides, in relevant part:

>**Trade Secrets and Confidential Information.**
>
>[…]
>
>Employee acknowledges that such confidential and trade secret information is owned and shall continue to be owned solely by the Employer. Employee specifically agrees never to use such information for any purpose other than doing business as directed by Employer. Employee further agrees not to divulge such information to any person other than the Employer and persons to whom the Employer has given its consent unless such information has already become common knowledge or unless the Employee is compelled to disclose information by governmental process. This continuing obligation of confidentiality survives the term of the employment relationship.

(Evans Aff. [Docket No. 13], Ex. C, ¶ 4b).

>**Restrictive Covenant – Non-Competition.** Employee agrees that during his or her employment with the Employer, and for a period of eighteen (18) months after the Employee's employment with Employer has been terminated for any reason, with or without cause, whether voluntarily or involuntarily, Employee will not, directly or indirectly, do any of the following:
>
>>a.  within the geographic area in which the Employer does business, directly or indirectly accept employment or render services to, or acquire any kind of ownership in, any person, firm, corporation, or department or division thereof, which is engaged in the research, development, manufacture, marketing, sale, support or promotion of any

5

> products or services that are competitive with any products or services of the Employer (whether commercially available or under development) on which the Employee worked or with respect to which the Employee received confidential or proprietary information during the Employee's engagement with the Employer; or
>
> b. in any way interfere or attempt to interfere, directly or indirectly with the Employer's relationships with any of its current or potential customers or suppliers; or
>
> c. plan, organize or engage in any business involving the design, development, production, marketing, sale or servicing of any competitive products or services, or conspire with others to do so; or
>
> d. solicit any employee of Employer for employment with or on behalf of any other entity or attempt to interfere with any contract relationship between Employer and any of its employees or, directly or indirectly, cause or attempt to cause any employee of Employer to terminate employment with Employer.

(Id. ¶ 7).

Defendant is, indeed, presently employed as VerHalen's General Manager – Trade/Commercial. (Oberdorfer Aff. [Docket No. 17], Ex. B at 1). In his current position, Defendant does *not* sell windows. (Id. at 2). Rather, the vast majority of Defendant's work has concerned internal management issues. (Id.) As of the date the parties filed their motion papers, Defendant had not had any contact with Plaintiff's commercial dealers' customers. (Id.) Defendant and VerHalen have agreed that Defendant will not be involved in the commercial Pella window sales aspect of VerHalen's business; that he will not solicit any of Plaintiff's commercial dealers or Plaintiff's commercial dealers' customers; and that the VerHalen commercial sales manager who previously reported to Defendant will no longer report to him. (Id.)

Defendant has also made the follow concessions:

1. Defendant has not and will not, through August 13, 2016, interfere with Plaintiff's relationships with its commercial dealers or its commercial dealers' customers. Defendant will not, through August 13, 2016, be involved in the commercial Pella window sales aspect of VerHalen's business and will not solicit any of Plaintiff's commercial dealers or its commercial dealers' customers.

2. Defendant has not and will not, through August 13, 2016, solicit any of Plaintiff's employees for employment with or on behalf of VerHalen or any other entity or attempt to interfere with any contractual relationship between Plaintiff and any of its employees.

3. Defendant has not and will not use or divulge any trade secret or confidential information that he acquired by reason of his employment with Plaintiff.

4. Defendant agreed to immediately return hard-copy Marvin documents that remained in his possession.

5. Defendant will permanently delete all electronic Marvin documents that remained in his possession, upon receipt of Plaintiff's permission to do so.

(Id.)

## II. PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, [DOCKET NO. 9]

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff moves the Court for an order enjoining Defendant from (1) providing services to or otherwise engaging, directly or indirectly, VerHalen Pella Windows (as an employee or otherwise); (2) using and/or disclosing any trade secret or confidential information Defendant acquired as a result of his employment with Plaintiff; (3) directly or indirectly interfering or attempting to interfere with Plaintiff's relationships with current or potential customers or suppliers; and (4) otherwise violating the terms of the Agreement. (Pl.'s Mot. for Preliminary Injunction [Docket No. 9]).

Plaintiff argues that Defendant's employment with VerHalen as general manager (1) directly violates the Agreement's non-compete provisions; (2) jeopardizes Plaintiff's confidential information; and, perhaps most significantly, (3) permits Defendant to use the knowledge, training, experience, and customer relationships acquired as a result of his employment with Plaintiff *against* Plaintiff in a competitive environment. Plaintiff argues that Defendant's employment with VerHalen unequivocally violates his non-competition obligations, as Defendant's duties as VerHalen's general manager include:

- Working with Management Team to develop a strategic plan to advance the company's mission and objectives and to promote revenue, profitability, and growth as an organization;
- Overseeing company operations to insure production efficiency, quality, service, and cost-effective management of resources;
- Planning, developing, and implementing strategies for generating resources and/or revenues for the company;
- Reviewing activity reports and financial statements to determine progress and status in attaining objectives and revising objectives and plans in accordance with current conditions;
- Evaluating performance of leadership staff for compliance with established policies and objectives of the company and contributions in attaining objectives.

(Oberdorfer Aff. [Docket No. 17], Ex. E). Although Defendant has represented that he will not *directly* solicit Plaintiff's dealers or the architectural, designer, and builder customers who purchase Plaintiff's products, Defendant nevertheless *manages* VerHalen "Trade" sales employees who *will* solicit Plaintiff's customers at Defendant's direction. (Pl.'s Mem. [Docket No. 11], at 20). Plaintiff argues that it is "in danger of losing longstanding client relationships which cannot easily be replaced[,]" and that its confidential information is in "jeopardy." (Id. at 23). Plaintiff argues,

> Mr. Severson's knowledge of [confidential] information – which was granted based on the express condition that he sign a non-competition agreement at the outset of his employment – now creates a strong likelihood of irreparable harm to Marvin if he is

>   permitted to manage the sales and operations of a large Pella distributor in the heart of his former Marvin territory.

(Id. at 24-25).

Defendant objects to the requested injunction insofar as Plaintiff effectively requests the Court *fire* Defendant from his position with VerHalen. However, Defendant does not object to an order enjoining (1) disclosure of confidential information, and (2) interference with Plaintiff's customer relationships. Defendant expressly consents to issuance of an order enjoining and restraining Defendant from (1) "[u]sing or disclosing any trade secret or confidential information which Severson acquired by reason of his employment with Marvin"; and (2) "[t]hrough August 13, 2016, soliciting business from Marvin's dealers or Marvin's dealers' customers with whom Severson worked during his employment at Marvin." (Def.'s Opp. Mem. [Docket No. 24], at 33). Defendant argues that Plaintiff has not lost a single customer or a single business opportunity as a result of Defendant's actions and employment with VerHalen, nor has Defendant used or otherwise disclosed Plaintiff's confidential information. Defendant has already made the following concessions and adjustments to assure Plaintiff that he does not intend to violate the Agreement:

- With VerHalen's consent, Defendant restructured his managerial position with VerHalen to avoid involvement in the commercial window sales aspect of VerHalen's business;
- Defendant has agreed to not solicit any of Plaintiff's customers through August 2016;
- Defendant has agreed to not use or divulge Plaintiff's trade secret or confidential information;
- Defendant has agreed to not solicit any of Plaintiff's employees or otherwise interfere with Plaintiff's relationships with its employees through August 2016; and
- Defendant returned all of Plaintiff's documents and property that had remained in his possession since his resignation.

(Id. at 2).

However, Defendant *does* challenge the validity (and therefore enforceability) of the Agreement's non-compete provisions. Defendant argues that the non-compete provisions are

overbroad, vague, and ultimately not enforceable. Defendant argues that the non-compete (paragraph 7 of the Agreement) does not contain any geographic limitations, contains undefined terms such as "products or services that are competitive with," and effectively prevents Defendant from working for *any* company that provides products that compete with Plaintiff.

### A.   Standard of Review

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). When determining whether to grant a motion for a preliminary injunction, courts consider four factors (i.e., the Dataphase factors): "(1) the probability of the movant's success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of the preliminary injunction is in the public interest." Emerson Elec. Co. v. Rogers, 418 F.3d 841, 844 (8th Cir. 2005); see also S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist., 696 F.3d 771, 776 (8th Cir. 2012) (citing Dataphase Sys., Inc. v. CL Sys., Inc. (Dataphase), 640 F.2d 109, 113 (8th Cir. 1981) (en banc)). "A preliminary injunction is an extraordinary remedy . . . and the burden of establishing the propriety of an injunction is on the movant." Watkins, Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (citations omitted). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Dataphase, 640 F.2d at 113.

### B.   Analysis

First and foremost, in light of Defendant's concessions, the Court recommends **GRANTING** Plaintiff's Motion for Preliminary Injunction, [Docket No. 9], in part, preliminarily enjoining Defendant from using and/or disclosing any trade secret or confidential

information Defendant acquired as a result of his employment with Plaintiff; and, through August 13, 2016, directly or indirectly soliciting business from Marvin's dealers or Marvin's dealers' customers with whom Severson worked during his employment at Marvin.

With respect to the final aspect of Plaintiff's motion – namely, Defendant's ongoing employment with VerHalen as general manager – the Court considers each Dataphase factor in turn.

1.  **Success on the Merits – Whether the Non-Compete is Valid and Enforceable**

While none of the Dataphase factors is entirely determinative, the likelihood of success on the merits often predominates courts' preliminary injunction analyses. Janel Russell Designs, Inc. v. Mendelson & Assoc., Inc., 114 F. Supp. 2d 856, 863 (D. Minn. 2000). "Because the probability of 'success on the merits has been referred to as the most important of the four factors,' we consider it first." Arnzen v. Palmer, 713 F.3d 369, 372 (8th Cir. 2013) (quoting Roudachevski v. All-American Care Ctrs., Inc., 648 F.3d 701, 706 (8th Cir. 2011) (internal edit and citation omitted)). To obtain a preliminary injunction, Plaintiff must demonstrate that it has a "fair chance of prevailing" on its claims. Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 732 (8th Cir. 2008). "In considering the likelihood of the movant prevailing on the merits, a court does not decide whether the movant will ultimately win." PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1143 (8th Cir. 2008).

In the present case, to prevail on its claims, Plaintiff must demonstrate that there is a fair probability that non-compete provisions are enforceable.[1]

Under Minnesota law, non-compete agreements are generally "looked upon with disfavor, cautiously considered, and carefully scrutinized." Medtronic, Inc. v. Hedemark, 2009

---

[1] The Agreement itself contains a provision dictating that Minnesota state substantive law governs. (Evans Aff. [Docket No. 13], Ex. C, ¶ 12). The parties do not dispute application of Minnesota state substantive law.

WL 511760, at *3 (Minn. Ct. App. Mar. 3, 2009) (quoting Bennett v. Storz Broadcasting Co., 134 N.W.2d 892, 898 (Minn. 1965)). Courts dislike and closely scrutinize non-compete agreements "because they partially restrict trade." Ecolab, Inc. v. Gartland, 537 N.W.2d 291, 294 (Minn. Ct. App. 1995) (citing National Recruiters v. Cashman, 323 N.W.2d 736, 740 (Minn. 1982)). When evaluating non-compete agreements, courts determine whether the agreements "serve a legitimate employer interest and are not broader than necessary to protect this interest." Kallok v. Medtronic, Inc., 573 N.W.2d 356, 361 (Minn. 1998). "If the employer's interest predominates, the noncompete agreement is valid and enforceable." Id. To determine whether a noncompete agreement is "not broader than necessary," the Court considers "(1) whether the restraint is necessary for the protection of the business or goodwill of the employer; (2) whether the restraint is greater than necessary to adequately protect the employer's legitimate interests; (3) how long the restriction lasts; and (4) the geographic scope of the restriction." Boston Scientific Corp. v. Duberg, 754 F. Supp. 2d 1033, 1039 (D. Minn. 2010) (citing Prow v. Medtronic, Inc., 770 F.2d 117, 120 (8th Cir. 1985) (citing, in turn, Bennett, 134 N.W.2d at 899)). "The test applied in examining restrictive covenants is whether the restriction imposed on the employee is greater than reasonably necessary to protect the employer's business, considering the nature of the employment, the temporal restriction imposed, and the geographic scope of the restriction." United Products Corp. of Am. v. Cederstrom, 2006 WL 1529478, at *3 (Minn. Ct. App. June 6, 2006) (citing Bennett, 134 N.W.2d at 899).

In light of the above standard, the Court finds that the Agreement's non-compete provisions, as drafted, are likely overbroad and not sufficiently tailored to Plaintiff's legitimate business interests. Paragraph 7 of the Agreement prohibits Defendant from working in any industry producing "products or services that are competitive with any products or services of the

Employer[.]" (Evans Aff. [Docket No. 13], Ex. C, ¶ 7a). The Agreement does not define "competitive" products or services and leaves the terms open-ended and, as a result, likely overly broad. The Agreement effectively prohibits Defendant from engaging in *any* business remotely related to or associated with Plaintiff's industry, and, significantly, the Agreement prohibits Defendant from working "within the geographic area in which the Employer does business[,]" including Plaintiff's *home state* of Wisconsin and surrounding states. (Id. ¶¶ 7a, 7c). Instead of prohibiting Defendant from working in select, *relevant portions* of its geographic territory (i.e., territories in which Plaintiff performed particularly significant, confidential work for Plaintiff), Plaintiff excludes Defendant from its *entire territory*. The language of the non-compete, on its face, is insufficiently defined and likely broader than necessary to protect Plaintiff's legitimate business interests. For this reason, the Court could find that Plaintiff is unlikely to prevail on the merits of its claims and deny the present motion in its entirety.

However, Minnesota has adopted a "blue pencil doctrine," allowing courts to *reasonably* enforce otherwise unenforceable non-competes. See Davies & Davies Agency, Inc. v. Davies, 298 N.W.2d 127, 132 (Minn. 1980) (honoring "blue pencil" revisions to a noncompetition agreement made under the "reasonableness" test). Minnesota law allows courts to blue-pencil unreasonable non-competition agreements and enforce the agreements only to the extent reasonable, permitting courts to balance the former employer's interests against the former employee's right to earn a living. See Sysdyne Corp. v. Rousslang, 2014 WL 902713, at *3 (Minn. Ct. App. Mar. 10, 2014), review granted (May 20, 2014), aff'd, 860 N.W.2d 347 (Minn. 2015). "Under the blue pencil doctrine as it has developed in Minnesota, a court can take an overly broad restriction and enforce it only to the extent that it is reasonable." Klick v. Crosstown State Bank of Ham Lake, Inc., 372 N.W.2d 85, 88 (Minn. Ct. App. 1985). However,

"[w]hile it is certainly within the power of the trial court to modify this contract, no cases say that a court *must* do so. As the *Davies* court said, 'a court should be permitted to make changes.'" Id. (emphasis added). It is within the *discretion* of the trial court to determine whether to modify non-compete provisions in equitable situations; a trial court's decision *not* to blue-pencil a non-compete is reviewed for abuse of discretion. Id.

This district has had the opportunity to apply Minnesota's blue pencil doctrine. In Hood Packaging Corp. v. Steinwagner, No. 14-cv-2979 (MJD/FLN), 2014 WL 4436105 (D. Minn. Sept. 9, 2014), the court recognized, in the context of a motion for a preliminary injunction, that courts have the *discretion* "to modify unreasonable restrictions on competition in employment agreements by enforcing them to the extent reasonable." (citing Hilligoss v. Cargill, Inc., 649 N.W.2d 142, 147 n.8 (Minn. 2002)). In Hood, although the court concluded that the non-compete's geographical limitation was broader than necessary, the court ultimately granted the employer's motion for a preliminary injunction after *slightly adjusting* the subject non-compete's geographic scope: "this Court grants Plaintiff's motion only insofar as it bars Steinwagner from competing against Hood on any of Steinwagner's former accounts at Hood, or the accounts then held by Hood on the date of Steinwagner's resignation." Hood, supra, at *8.

Even in light of Hood, the Court takes this opportunity to emphasize the fact that nothing in Minnesota state law *requires* the Court to blue-pencil Plaintiff's non-compete provisions; the Court could, in its discretion, simply choose to find that Plaintiff is unlikely to succeed on the merits of its claims. However, in the interests of balancing Plaintiff's legitimate business interests *and* Defendant's employment interests, the Court declines to find that Plaintiff is unlikely to prevail on the merits of its claims in favor of considering the *reasonable*, limited

14

enforcement of the non-compete. Accordingly, the Court considers the remaining Dataphase factors.

### 2.     Irreparable Harm and Balance of Harms

To demonstrate a threat of irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Roudachevski, 648 F.3d at 706 (internal quotation marks omitted). "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." Id.

Minnesota courts have held that "[i]rreparable harm may be inferred from breach of a valid non-compete agreement if the former employee obtained a personal hold on the good will of the former employer." Hood, 2014 WL 4436105, at *6 (citing St. Jude Med. S.C., Inc. v. Ord, No. 09-cv-738 (JNE/JSM), 2009 WL 973275, at *5 (D. Minn. Apr. 10, 2009)). The Minnesota Court of Appeals has inferred irreparable harm "from the breach of a restrictive covenant in an employment contract." Overholt Crop Ins. Serv. Co. v. Bredeson, 437 N.W.2d 698, 701 (Minn. Ct. App. 1989); see also Thermorama, Inc. v. Buckwold, 125 N.W.2d 844, 845 (Minn. 1964).

Although Defendant appears to concede that he has breached the non-compete *as drafted*, the ultimate validity and enforceability of the non-compete is in question. See section II.B.1., supra. For this reason, the Court is hesitant to simply *infer* irreparable harm. Additionally, Minnesota courts have often inferred irreparable harm only upon an affirmative showing that the former employee threatened the former employer's legitimate business interests. See Hood, 2014 WL 4436105, at *6 (wherein the court inferred irreparable harm after finding that the former employee had sent an email to his new employer containing competitive information of both a public and non-public nature: "The Court will infer a threat of irreparable harm should Steinwagner continue to share Hood's confidential information, or compete with Hood

customers in violation of the Agreement."); Overholt, 437 N.W.2d at 701 (wherein the former employee admitted to signing a contract with 50-55 of his former employer's former customers and 6 or 7 of his former employer's customers – the court held that "the inference that respondent has been irreparably harmed is supported by appellant's testimony"); United Products, 2006 WL 1529478, at *4 ("There is no Minnesota authority presuming irreparable harm solely because a non-technical employee with access to confidential information took a position with a competitor. . . . [T]here is no presumption of irreparable harm resulting from Cederstrom's breach of the non-compete agreement because UPC put forth no evidence suggesting that Cederstrom had personal contact with his former customers sufficient to affect UPC's goodwill."). "Minnesota courts do not grant injunctive relief solely because a former employer presumes that disclosure and solicitation are inevitable." Id. at *5.

For this reason, the Court declines to simply *infer* irreparable harm in the present case. Because Plaintiff relies on an *inference* of irreparable harm and does not articulate any specific, particularized, non-speculative irreparable harm it stands to incur, Plaintiff has failed to demonstrate irreparable harm. Plaintiff is unable to *quantify* the harm it stands to incur, opting instead for the "inferred" harm attributable to violating non-competes and speculative "future" harm it stands to incur *in the event* Defendant acts competitively against it. The Court could recommend denying Plaintiff's motion for this reason alone. See Roudachevski, 648 F.3d at 706.

### 3. Public Interest

Finally, the Court considers the public interest. As is the case with most public interest considerations, arguments exist to support both parties' positions. The public has a general interest in the enforcement of valid, voluntarily entered contracts. However, as articulated above, public policy more vehemently favors *not* enforcing overbroad, unduly restrictive non-competes.

In light of the fact that Minnesota law generally disfavors non-compete agreements, and in light of the fact that the subject non-compete provisions are likely overbroad and unduly restrictive, the public interest generally favors Defendant.

### 4. The Cumulative Effect of the Dataphase Factors

In light of the above analysis, the Court finds that Plaintiff has not sustained its burden in demonstrating the propriety of the requested preliminary injunction. In light of the fact that Court already recommends granting the stipulated portions of the present motion[2] and the fact that Plaintiff has ultimately failed to demonstrate irreparable harm, the Court recommends **DENYING** Plaintiff's Motion for Preliminary Injunction, [Docket No. 9], insofar as it requests the Court compel Defendant to resign his position with VerHalen. The Court may *reasonably* enforce[3] the subject non-compete and sufficiently protect Plaintiff's legitimate business interests at this time by adopting Defendant's remaining concession – namely, that Defendant restrict his managerial position to avoid involvement in the commercial window sales aspect of VerHalen's business. To fire Defendant from his *managerial* – not *sales* – position and prohibit him from finding work within his chosen industry within his home state of Wisconsin because of *speculative* threats of potentially unfair competition with Plaintiff would be fundamentally unreasonable in light of (1) the unlikely enforceability of the subject non-compete provisions as drafted; and (2) Plaintiff's inability to demonstrate irreparable harm.[4] The fact that Plaintiff requests the Court blue-pencil the non-compete provisions so that it may be reasonably enforced

---

[2] The Court recommends, in light of Defendant's voluntary concessions, preliminarily enjoining Defendant from using and/or disclosing any trade secret or confidential information Defendant acquired as a result of his employment with Plaintiff; and, through August 13, 2016, directly or indirectly soliciting business from Marvin's dealers or Marvin's dealers' customers with whom Defendant worked during his employment at Marvin.

[3] I.e., blue-pencil.

[4] The Court also takes this opportunity to point out that any potential loss(es) Plaintiff may incur attributable to Defendant's work for VerHalen as influenced by Defendant's "insider information" acquired as a result of his time with Plaintiff are quantifiable and appropriately compensated in the form of monetary damages.

*while still maintaining that the Court must necessarily fire Plaintiff* from his position with VerHalen is simply untenable and contradictory.

### III. CONCLUSION

For the foregoing reasons, and based on all of the files, records, and proceedings herein,

**THE COURT HEREBY RECOMMENDS:**

That Plaintiff's Motion for Preliminary Injunction, [Docket No. 9], be **GRANTED in part** and **DENIED in part**, as follows:

1. That Defendant be preliminarily enjoined from using and/or disclosing any trade secret or confidential information Defendant acquired as a result of his employment with Plaintiff;

2. That through August 13, 2016, Defendant be preliminarily enjoined from directly or indirectly soliciting business from Marvin's dealers or Marvin's dealers' customers with whom Defendant worked during his employment at Marvin; and

3. That Defendant be permitted to continue working as VerHalen's general manager, except for direct management of VerHalen's commercial window sales, as articulated herein.

Dated: July 7, 2015                                               s/Leo I. Brisbois
                                                                                   Leo I. Brisbois
                                                                                   U.S. MAGISTRATE JUDGE

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.